```
COOLEY LLP
MATTHEW D. BROWN (196972) (brownmd@cooley.com)
AMY M. SMITH (287813) (amsmith@cooley.com)
101 California Street
5th Floor
San Francisco, CA  94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Plaintiff
DISTINCT MEDIA LIMITED
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DISTINCT MEDIA LIMITED,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DOE DEFENDANTS 1-50,<br><br>　　　　　Defendants. | Case No.  15-cv-03312-NC<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1)  VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §§ 1030,** *ET SEQ.***; AND**<br><br>**(2)  VIOLATION OF CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT, CAL. PEN. CODE §§ 502,** *ET SEQ.***.**<br><br>**[DEMAND FOR JURY TRIAL]** |

For its complaint, Distinct Media Limited ("Distinct Media") alleges as follows:

## I.　PARTIES

**1.**　Plaintiff Distinct Media is a Registered Private Company organized under the laws of Jersey, Channel Islands.  Distinct Media operates approximately 80 price comparison websites around the world, including approximately 20 websites in the United States.

**2.**　Doe Defendants 1-50 are one or more individuals, business entities, corporations, registered private companies, limited liability companies, partnerships, or organizations of unknown residence and citizenship that acted together as agents of their co-Defendants to instigate and sustain a cyberattack against Distinct Media ("Defendants").  Distinct Media is

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

122026886

1.

PLAINTIFF DISTINCT MEDIA LIMITED'S
FIRST AMENDED COMPLAINT – CASE NO. 15-CV-03312-NC

informed and believes, and on that basis alleges, that each of the Defendants is responsible in some manner for some or all of the acts alleged herein, and Distinct Media's damages were proximately caused by such Defendants. On information and belief, Defendants operate two websites involved in the cyberattack, store.cartideas.com and store.pricepicker.net. Distinct Media does not know Defendants' identities or locations at this time. Distinct Media will amend its complaint to name Defendants when their identities are learned.

## II.   JURISDICTION AND VENUE

**3.**   This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331, because this action alleges violations of the Computer Fraud and Abuse Act, 18, U.S.C. §§ 1030 *et seq*.

**4.**   Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because, on information and belief, Defendants, to benefit themselves, and without Distinct Media's knowledge or authorization, redirected Internet traffic from its intended destination to the website operated by an unrelated third party, eBay Inc. ("eBay"), whose principal place of business is in San Jose, California. Depending on the residence of Defendants, venue may be proper under 28 U.S.C. § 1391(b)(1) or § 1391(b)(3), as well.

## III.   FACTS AND BACKGROUND

**5.**   Pursuant to agreements with third-party advertisers or advertising networks, Distinct Media displays advertisements on its websites and is paid a small fee each time an Internet user clicks on an ad and is directed to the advertiser's website. These "pay-per-click" agreements are one of Distinct Media's primary sources of revenue.

**6.**   On or about March 1, 2009, Distinct Media entered into a pay-per-click agreement ("Agreement") with Yahoo! ("Yahoo"), which provides ad inventory to Distinct Media on behalf of advertisers. If a user clicks on an ad provided by Yahoo that appears on one of Distinct Media's websites, then Yahoo pays Distinct Media a small fee, and typically the user who clicks on the ad is taken to the website linked to the ad.

**7.**   According to general industry practice and the terms of the Agreement, Yahoo will pay Distinct Media only for clicks made by independent Internet users; Distinct Media is

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

122026886

2.

PLAINTIFF DISTINCT MEDIA LIMITED'S
FIRST AMENDED COMPLAINT – CASE NO. 15-CV-03312-NC

1   prohibited from using any artificial means to generate clicks on ads.  As a result, Distinct Media
2   cannot utilize any code or JavaScript commands to automatically click on ads in order to increase
3   payments to itself.

4   **8.**   Distinct Media's internal databases, computers, computer programs, and computer
5   networks ("Distinct Media's Systems") are proprietary and confidential.  The contents of Distinct
6   Media's Systems are closely guarded by Distinct Media.  Only authorized Distinct Media
7   employees are permitted to access Distinct Media's Systems or make any modifications.  No one
8   outside of Distinct Media is authorized to access Distinct Media's Systems.

9   **9.**   On or around April 2013, Defendants caused a jquery.form.js file ("Jquery File")
10  to be embedded in a development server used by Distinct Media without Distinct Media's
11  knowledge or consent.  On or around April 22, 2014, Defendants caused this Jquery File to be
12  transferred to one of the servers Distinct Media leases in the United States (Distinct Media does
13  not own these servers), named "Web 1," without Distinct Media's knowledge or consent.  Web 1
14  serves twenty-eight Distinct Media websites, all of which were infected with the Jquery File.

15  **10.**  Distinct Media was unaware of the existence of this Jquery File until Yahoo
16  alerted Distinct Media to unusual online activity involving Distinct Media's websites and
17  Yahoo's ads at a November 10, 2014 meeting.  At this meeting, Yahoo showed Distinct Media a
18  video of a computer screen depicting a user accessing a website that displays Yahoo ads.  While
19  the website was loading, the loading process was interrupted by an unusual delay of a few
20  seconds and then a Yahoo ad on the website was activated, as though it had been clicked, but the
21  video showed that the user's mouse was not hovering over the Yahoo ad when it was activated.
22  According to Yahoo, this video demonstrated that Distinct Media was automatically clicking
23  ("auto-clicking") on Yahoo ads in violation of the Agreement.

24  **11.**  Distinct Media retained Deloitte Consulting LLP ("Deloitte") to serve as a forensic
25  computing consultant to investigate the source and impact of the Jquery File and provide an
26  independent report.  Distinct Media continued its own internal analysis alongside Deloitte's
27  independent investigation.

28  **12.**  Distinct Media's investigation revealed that approximately 3 out of every 100

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

122026886

3.

PLAINTIFF DISTINCT MEDIA LIMITED'S
FIRST AMENDED COMPLAINT – CASE NO. 15-CV-03312-NC

times a Distinct Media website loaded, Defendants' Jquery File would modify the appearance of a Yahoo ad so that it would look like an ad for content on Amazon.com ("Amazon") or eBay.com, websites that display goods offered for sale. In other words, an icon for what appeared to be an ad for content on Amazon or eBay was superimposed on top of the Yahoo ad so that the user thought he or she was looking at an Amazon or eBay ad. When the user clicked on the fake Amazon or eBay ad ("Fake Ads"), two things happened simultaneously: (1) the Yahoo ad underneath the Fake Ad was recorded as having been clicked, incurring a click fee; and (2) a new browser window opened to a new website not affiliated with Distinct Media or Yahoo, click-meter.com. Distinct Media's investigations revealed that the click-meter.com website is operating under a fraudulent domain, masquerading as a real company, clickmeter.com. The fake click-meter.com website then directed the user to one of two websites, also not affiliated with Distinct Media or Yahoo, store.cartideas.com and store.pricepicker.net. From there, these two websites directed users to Amazon or eBay, depending on which Fake Ad was superimposed on top of the real Yahoo ad that was "clicked." Thus, Defendants' Jquery File forced Yahoo to incur a click fee to Distinct Media, even though the user was redirected to Amazon and eBay's websites and never visited the website associated with the Yahoo ad.

13. Until Yahoo brought the video to Distinct Media's attention on November 10, 2014, Distinct Media had no reason to know that Defendants' Jquery File had infected its systems because Distinct Media's twenty-eight infected websites were incurring fake clicks on Fake Ads only approximately 3% of the time, and the overall volume of clicks on these infected websites did not decline significantly.

14. On information and belief, Distinct Media understands that Amazon and eBay have referral agreements with individuals or companies ("referral sources"). When a referral source directs an Internet user to Amazon's website and the user makes a qualified purchase, Amazon will pay the referral source a commission based on the user's purchase. (*See* Amazon Associates, https://affiliate-program.amazon.com/gp/associates/join/compensation.h (last visited Oct. 6, 2015.) Similarly, when a referral source directs Internet user traffic to eBay and its partner websites, eBay will pay the referral source based on the volume and type of traffic. (*See*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

122026886

4.

PLAINTIFF DISTINCT MEDIA LIMITED'S
FIRST AMENDED COMPLAINT – CASE NO. 15-CV-03312-NC

eBay Partner Network, https://www.ebaypartnernetwork.com/files/hub/en-US/index.html (last visited Oct. 6, 2015.)

15. Defendants' Jquery File was redirecting user traffic from Distinct Media's websites to Amazon or eBay by disguising the Yahoo ads as Amazon and eBay ads. Distinct Media thus has reason to believe that certain Defendants are the operators of the store.cartideas.com and store.pricepicker.net domains, that the operators of these domains have referral agreements with Amazon and/or eBay, and that Defendants were earning commissions from user traffic they diverted from Distinct Media's websites. Distinct Media has been unable to identify Defendants through the store.cartideas.com and store.pricepicker.net domains, but has reason to believe that Amazon and/or eBay will be able to identify certain Defendants through their records.

16. Distinct Media presented the results of its investigation to Yahoo to show that Distinct Media was the victim of Defendants' cyberattack, and Distinct Media was not responsible for the auto-click scheme. However, because Distinct Media was unable to identify Defendants, Distinct Media was forced to pay Yahoo significant amounts for what Yahoo asserted to be a breach of the Agreement.

## IV.   COUNT ONE

### (COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §§ 1030, *et seq.*)

17. Plaintiff Distinct Media realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-16 above.

18. Distinct Media's proprietary database is stored on Distinct Media's computers, computer systems, and computer networks, which are connected to the Internet, are used in interstate commerce, and are considered "protected computers" within the meaning of 18 U.S.C. §§ 1030(e)(1), (e)(2)(B).

19. Defendants knowingly and with intent to defraud accessed Distinct Media's protected computers without authorization, or exceeded authorized access, and by means of such conduct furthered their intended fraud and obtained value beyond the use of Distinct Media's computers in violation of 18 U.S.C. § 1030(a)(4).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

122026886

5.

PLAINTIFF DISTINCT MEDIA LIMITED'S
FIRST AMENDED COMPLAINT – CASE NO. 15-CV-03312-NC

**20.** Defendants knowingly caused the transmission of the Jquery File on Distinct Media's protected computers without authorization, and as a result of such conduct, intentionally caused damage in violation of 18 U.S.C. § 1030(a)(5)(A).

**21.** Defendants intentionally accessed Distinct Media's protected computers without authorization, and as a result of such conduct, recklessly caused damage in violation of 18 U.S.C. §§ 1030(a)(5)(B).

**22.** Defendants intentionally accessed Distinct Media's protected computers without authorization, and as a result of such conduct, caused damage and loss in violation of 18 U.S.C. § 1030(a)(5)(C).

**23.** Defendants' accessing and modification of Distinct Media's database from Distinct Media's protected computers has harmed Distinct Media in that, among other things, Distinct Media has expended resources to investigate the unauthorized access and to prevent such access from occurring. The resulting loss to Distinct Media exceeds $5,000.

**24.** Distinct Media may bring this action against Defendants under 18 U.S.C. § 1030(g) because, by virtue of Defendants' violations of 18 U.S.C. §§ 1030(a)(4) and (a)(5)(A)-(C), Distinct Media has suffered damage and/or loss. Defendants' conduct also involves one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of 18 U.S.C. § 1030(c)(4)(A)(i), including, without limitation, a loss to Distinct Media aggregating at least $5,000 in value during a one-year period.

## V.   COUNT TWO

### (CALIFORNIA PENAL CODE §§ 502, *et seq.*)

**25.** Plaintiff Distinct Media realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-24 above.

**26.** Distinct Media's proprietary database consists of, or is stored on, Distinct Media's data, computers, computer networks, computer programs or software, computer services, and computer systems within the meaning of Cal. Penal Code §§ 502(b)(2)–(5), (b)(8).

**27.** Defendants' Jquery file is a computer contaminant within the meaning of Cal. Penal Code § 502(b)(12).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

122026886

6.

**PLAINTIFF DISTINCT MEDIA LIMITED'S
FIRST AMENDED COMPLAINT – CASE NO. 15-CV-03312-NC**

**28.** Defendants knowingly accessed and without permission altered and/or used Distinct Media's data, computers, computer systems, or computer networks to execute a scheme to defraud in violation of Cal. Penal Code § 502(c)(1)(A).

**29.** Defendants knowingly accessed and without permission altered and/or used Distinct Media's data, computers, computer systems, or computer networks to wrongfully obtain money, property, or data in violation of Cal. Penal Code § 502(c)(1)(B).

**30.** Defendants knowingly and without permission made use of data from Distinct Media's computers, computer systems, or computer networks in violation of Cal. Penal Code § 502(c)(2).

**31.** Defendants knowingly and without permission used or caused to be used Distinct Media's computer services in violation of Cal. Penal Code § 502(c)(3).

**32.** Defendants knowingly accessed and without permission added and/or altered data, computer software, or computer programs residing on Distinct Media's computers, computer systems, or computer networks in violation of Cal. Penal Code § 502(c)(4).

**33.** Defendants knowingly and without permission provided and/or assisted in providing a means of accessing Distinct Media's computers, computer systems, or computer networks in violation of Cal. Penal Code § 502(c)(6).

**34.** Defendants knowingly and without permission accessed and/or caused to be accessed Distinct Media's computers, computer systems, or computer networks in violation of Cal. Penal Code § 502(c)(7).

**35.** Defendants knowingly introduced a computer contaminant into Distinct Media's computers, computer systems, or computer networks in violation of Cal. Penal Code § 502(c)(8).

**36.** Defendants' accessing and modification of Distinct Media's computers, computer systems, or computer networks, as described above, has harmed Distinct Media in an amount to be proven at trial.

**37.** Distinct Media may bring this action against Defendants under Cal. Penal Code § 502(e) because Distinct Media is the owner or lessee of the computers, computer systems, computer networks, computer programs, or data and has suffered damage or loss by reason of

Defendants' violation of Cal. Penal Code §§ 502(c)(1)-(4) and (c)(6)-(8).

## VI.   JURY DEMAND

**38.**   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury as to all issues so triable in this action.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Distinct Media prays for the following relief:

**A.**   For injunctive relief, as follows:  An order barring Defendants from any further acts constituting violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(4), (a)(5)(A)-(C), and California Penal Code §§ 502(c)(1)-(4), (c)(6)-(8), including any attempts to access Distinct Media's computers, computer systems, or computer networks or any attempts to delete, alter, modify, or add data, code, programs, or other unauthorized information to Distinct Media's computers, computer systems, or computer networks;

**B.**   For judgment in favor of Plaintiff, and against Defendants, for compensatory and punitive damages in such amounts as may be proven at trial;

**C.**   For reasonable attorneys' fees and costs; and

**D.**   For such other relief as the Court may deem just and proper.

Dated: October 6, 2015                                           COOLEY LLP

*/ s / Matthew D. Brown*
Matthew D. Brown

Attorneys for Plaintiff
DISTINCT MEDIA LIMITED

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

122026886

8.

**PLAINTIFF DISTINCT MEDIA LIMITED'S
FIRST AMENDED COMPLAINT – CASE NO. 15-CV-03312-NC**