UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISTINCT MEDIA LIMITED,<br>　　　　Plaintiff,<br>　　v.<br>LEV SHUTOV,<br>　　　　Defendant. | Case No.15-cv-03312-NC<br><br>**REQUEST FOR REASSIGNMENT AND REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 59 |

In this Computer Fraud and Abuse Act case, plaintiff Distinct Media accuses Russian national Lev Shutov of illegally circumventing website advertisements to siphon proceeds from click-through advertisements. After ex parte discovery authorized by this Court, Distinct Media identified Lev Shutov as the beneficiary of the eBay and Yahoo accounts holding the rerouted advertising fees. Shutov has not appeared in this case, but the Court received correspondence from his lawyer in Russia objecting to this Court's jurisdiction. Distinct Media now moves for default judgment, seeking $3,071,524.27 in damages.

After reviewing the motion, the Court concludes that jurisdiction over Shutov is proper, and recommends granting the motion for default judgment. The Court also recommends awarding $180,524.27 in damages and denying Distinct Media's further damages request.

//

Case No. 15-cv-03312-NC

## I. BACKGROUND

Plaintiff Distinct Media Limited is a private company that operates approximately eighty websites around the world, including approximately twenty websites in the United States. Dkt. No. 26 (Second Amended Complaint) at ¶ 1. Defendant Lev Shutov is a resident of Yoshkar-Ola, Russia. SAC at ¶ 2. Distinct Media believes other, unidentified defendants are involved in the alleged fraudulent activity, but has been unable to identify these individuals. SAC ¶ 3.

Distinct Media displays advertisements on its websites and is paid a small fee each time an internet user clicks on an ad and is directed to the advertiser's website. SAC ¶ 5. In 2009, Distinct Media entered into a pay-per-click agreement with Yahoo! for advertising on Distinct Media's website. SAC ¶ 6. Under this agreement, Distinct Media may not use any artificial means to generate clicks. SAC ¶ 6.

Distinct Media's internal databases, computer, computer programs, and computer networks are confidential and only authorized employees are permitted to access the systems. SAC ¶ 8. Beginning in 2009, Distinct Media contracted with a Russian company, CPS Labs, to design the Distinct Media systems. SAC ¶ 9. Shutov was one of approximately six engineers employed by CPS Labs hired for this project. SAC ¶ 9. Shutov was a lead software developer on the project and worked on the design of Distinct Media's systems from 2009 until April 2011. SAC ¶¶ 10-11. Shutov's wife, Irina Shutov, is currently employed at Distinct Media in Russia. SAC ¶ 12.

In 2013, defendants caused a jquery.form.js file to be embedded in the server used by Distinct Media, and in 2014, the file was transferred to a server Distinct Media leases in the U.S. SAC ¶ 13. On November 19, 2014, Distinct Media discovered this file at a meeting with Yahoo. SAC ¶ 14. According to Yahoo, the Jquery file caused auto-clicking on the ads, which violates the Yahoo pay-per-click agreement. SAC ¶ 14.

Distinct Media retained Deloitte Consulting to investigate and continued its own internal investigation. SAC ¶ 15. Distinct Media discovered the the JQuery file caused an Amazon or eBay advertisement to be superimposed on top of the Yahoo ad. SAC ¶ 16.

When users clicked on the Amazon or eBay advertisements, Yahoo paid a pay-per-click fee, the user was briefly routed to a third party website, and then transferred to either Amazon or eBay websites. SAC ¶ 16.

Distinct Media alleges that Shutov and others were involved in this re-routing. In addition, Shutov established various Amazon and eBay accounts to receive payments for the advertisement clicking. SAC ¶¶ 19-20. Shutov established online payment accounts through MTACC and eCoin.com. SAC ¶ 20. According to the MTACC account history, eBay paid Shutov more than $314,000 from August 2013 to December 2014. SAC ¶ 21. In addition, Amazon paid more than $24,000 to his MTACC account. SAC ¶ 23. Shutov's MTACC account was frozen in December 2015 with a balance of more than $155,000. SAC ¶ 25.

On July 16, 2015, Distinct Media sued Doe Defendants and sought expedited discovery to identify the defendants by issuing subpoenas to eBay and Amazon. The Court granted three of Distinct Media's requests for ex parte discovery. Dkt. Nos. 14, 17, 41. In the Second Amended Complaint, Distinct Media identified Shutov as the creator and beneficiary of the JQuery file and alleges that his conduct violates the Computer Fraud and Abuse Act 18 U.S.C. § 1030, California Penal Code § 502, and California Business and Professions Code § 17200. Dkt. No. 26. Shutov did not appear in this case. Ruslan Ivanov, Shutov's lawyer, wrote to the Court and stated an objection to this Court's exercise of jurisdiction over Shutov. Dkt. Nos. 33, 62. Distinct Media now moves for default judgment against Shutov.

Distinct Media has consented to the jurisdiction of a magistrate judge. Dkt. No. 7. However, Shutov has not consented to the jurisdiction of a magistrate judge, so the Court writes this order as a report and recommendation. 28 U.S.C. § 636. The clerk will transfer this case to a district judge.

///

## II. LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a). After entry of default, the Court has discretion to grant default judgment on the merits of the case. Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to grant default judgment, the Court considers the following factors: (1) the merits of the plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The factual allegations of the complaint, except those concerning damages, are deemed admitted by the non-responding parties. *Shanghai Automation Instrument*, 194 F. Supp. 2d at 995; *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true").

## III. DISCUSSION

The Court first considers Shutov's objection to the jurisdiction of this Court. Then, the Court analyzes the merits of the complaint, the remaining *Eitel* factors, the injunctive relief, and the damages sought.

### A. Jurisdiction and Service of Process

When presented with a motion for default judgment, the Court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Also, the Court may only enter default judgment against a minor or incompetent person if represented by a general guardian, conservator, or other like fiduciary who has appeared. Fed. R. Civ. P. 55(b)(2).

The Court previously found that the service of process was in compliance with Federal Rule of Civil Procedure 4(f)(2)(C), which requires personal delivery of the

summons and complaint to a foreign defendant. Dkt. No. 53.

Shutov's attorney has written to the Court objecting to its jurisdiction over Shutov. Dkt. Nos. 33, 62. While Distinct Media points out that this is a procedurally inappropriate objection, the Court still must consider whether it has jurisdiction over the defendant and subject matter in assessing a motion for default judgment. *In re Tuli*, 172 F.3d at 712.

In California, a court may exercise specific personal jurisdiction over a nonresident defendant if (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Here, the complaint alleges that Shutov's actions were directed at eBay, Yahoo, and Amazon, with the MTACC accounts residing in this district.

Generally, the plaintiff has the burden of establishing jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Under the above specific jurisdiction test, if the plaintiff satisfies the first two elements, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802. The plaintiff "need only make a prima facie showing of personal jurisdiction." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2009).

The first element of the specific jurisdiction test is satisfied by either "purposeful availment" or "purposeful direction" by the defendant. *Brayton Purcell LLP*, 606 F.3d at 1128. Under a purposeful availment analysis, "[a] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.* "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated

1  contacts." *Burger King v. Rudzweciz*, 471 U.S. 462, 475 (1985).

2  Here, the Court is satisfied that plaintiff has sufficiently alleged that Shutov has directed his actions into the United States and specifically California. The JQuery file infiltrated Distinct Media's U.S. servers. Additionally, Yahoo was a victim of the JQuery file's auto clicking function in the Northern District of California. Finally, the MTACC accounts holding the proceeds of these actions are in this district. Thus, Shutov directed his activities at the United States and California, and Distinct Media's claim arises from those activities.

Thus, the Court proceeds to consider the *Eitel* factors in determining whether default judgment is appropriate.

### B. Merits of the Complaint

Under the second and third *Eitel* factors, in deciding whether to grant default judgment, the Court must examine the merits of the plaintiff's substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. At this stage, the Court takes take "the well-pleaded factual allegations" in the complaint as true; however, the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of No. America*, 980 F.2d 1261, 1267 (9th Cir. 1992).

In considering Distinct Media's requests for early discovery, the Court analyzed the merits of the prior complaints and found that Distinct Media's first two claims for relief under the Computer Fraud and Abuse Act and California Penal Code were sufficiently pled. Dkt. Nos. 11, 14, 17. The Second Amended complaint also alleges a third cause of action under the California Business and Professions Code § 17200, which bars any unlawful, unfair, or fraudulent business practices. The Court finds that this claim is also meritorious, given the sufficiently pled allegations that Shutov fraudulently accessed Distinct Media's servers and earned money from his scheme.

### C. Remaining *Eitel* Factors

Next, the Court considers the sum of money at stake in the action, the possibility of prejudice to the plaintiff, the possibility of a dispute concerning material facts, whether the default was due to excusable neglect, and the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72. Generally, courts are hesitant to enter default judgments where large amounts of money are at stake. *Manuel v. Thomas*, 967 F.2d 588 (9th Cir. 1992) (finding that $4,405,000 award was too large to enter default judgment).

First, Distinct Media seeks $3,071,524.27 in damages. However, at the hearing, Distinct Media represented that the only assets Shutov appears to have in the United States is the $155,000 frozen in the MTACC account.

Second, Shutov has responded to plaintiff's complaint and objected to this Court's jurisdiction, leading to an inference that Shutov is properly on notice and refuses to participate in the proceedings. Thus, Distinct Media would be prejudiced if the Court does not grant a default judgment, and Shutov's default is not due to excusable neglect.

Third, there is likely a dispute concerning material facts, especially regarding Shutov's identity and whether his access was authorized. However, the Court's concern is ameliorated by the discovery that Distinct Media conducted with Court permission.

In conclusion, the Court finds that the *Eitel* factors weigh in favor of granting default judgment.

### D. Injunctive Relief

Distinct Media requests that this Court enter a permanent injunction enjoining Shutov and all others acting in concert with Shutov from (i) accessing or attempting to access Distinct Media's computers, (ii) deleting, altering, modifying or adding data, code, programs, or other unauthorized information about Distinct Media's computers, computer systems, or computer networks; and (iii) any further acts constituting violations of the CFAA, § 502, or the UCL with respect to Distinct Media and its computers, computer systems, and computer networks. Dkt. No. 59 at 25.

To obtain injunctive relief, plaintiff must demonstrate: (1) that it has suffered an

irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Facebook, Inc. v. Grunin*, 77 F. Supp. 3d 965, 973 (N.D. Cal. 2015) (granting default judgment request for injunctive relief under the CFAA). The scope of the injunctive relief must be "narrowly tailored to remedy only the specific harms" of the plaintiff. *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998-1002 (N.D. Cal. 2006) (citing *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004)).

The Court finds that Distinct Media's injunctive relief request is appropriate because it appears that Shutov has the information and ability to perpetrate further attacks on Distinct Media's systems. In addition, Distinct Media argues that it has suffered more harm than simply monetary damage, such as harm to its reputation and business relationships. Thus, the Court concludes that Distinct Media is entitled to a permanent injunction.

However, the Court finds that it cannot enjoin "all others acting in concert with Shutov" because there is a lack of specific evidence as to who would be enjoined. Additionally, the third request seeking to enjoin Shutov from any further acts constituting violations of the CFAA, § 502, or the UCL is too vague and broad to be enforceable or permissible. Thus, the Court grants the injunction request enjoining Shutov from (i) accessing or attempting to access Distinct Media's computers, and (ii) deleting, altering, modifying or adding data, code, programs, or other unauthorized information about Distinct Media's computers, computer systems, or computer networks.

**E.   Damages**

While the Court accepts the allegations in the complaint as true at the default judgment stage, the Court has discretion to award damages as appropriate. *Geddes*, 559 F.2d at 560. Under the CFAA and § 502, a plaintiff can recover "compensatory damages

1  and injunctive or other equitable relief." 18 U.S.C. § 1030(g); Cal. Penal Code §

2  502(e)(1). This recovery includes "any reasonable cost to any victim, including the cost of

3  responding to an offense, conducting a damage assessment, and restoring the data,

4  program, system, or information to its condition prior to the offense, and any revenue lost,

5  cost incurred, or other consequential damages incurred because of interruption of service."

6  18 U.S.C. § 1030(e)(11).

   Distinct Media requests several categories of damages: (1) Deloitte Consulting LLP investigative fees; (2) internal investigative fees; (3) attorneys' fees and costs; (4) recovery of the money paid to Yahoo for breaching the advertising contract; and (5) disgorgement of money already transferred from the MTACC account. The Court considers each in turn.

### 1. Deloitte Consulting Investigative Fees

Distinct Media seeks $27,889.27 in fees paid to Deloitte Consulting to investigate the JQuery file's source, function, and the extent of damages to Distinct Media's system. Dkt. No. 59 at 22. In support of this request, Distinct Media has provided the declaration of Thomas Howsam, its parent company's Chief Technology Officer. Dkt. No. 59-1. Howsam attests that Distinct Media retained Deloitte Consulting and paid a sum in British pounds, which he has converted to the $17,899.27 U.S. dollars sought. In addition, Distinct Media has provided a receipt of these services at Exhibit A.

The Court finds this request is within the scope of compensatory damages recoverable and properly supported by factual evidence. This request is GRANTED.

### 2. Internal Investigative Fees

Next, Distinct Media seeks $33,042 in internal investigative costs. Distinct Media estimates that Howsam and John Furlong, Distinct Media's system administrator spent over 350 hours investigating the JQuery file. Distinct Media arrives at the total amount by providing estimated cost per hour for each employee, multiplied by the estimated time spent on this investigation. Dkt. No. 59-1 ¶ 9. The statute provides for recovery of losses to a business, and other courts in this district have authorized the recovery for internal investigative time and resources. *See SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp.

Case No.15-cv-03312-NC            9

2d 975, 981 (N.D. Cal. 2008); *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-cv-5780 LHK, 2013 WL 5372341, at *14 (N.D. Cal. Sept. 25, 2013).

The Court finds this request is within the scope of compensatory damages recoverable and properly supported by factual evidence. This request is GRANTED.

### 3. Attorneys' Fees and Costs

Third, Distinct Media seeks to recover $119,593.00 in legal fees to pursue motions for expedited discovery and prepare draft subpoenas. This request is supported by the declaration of Distinct Media's attorney, Matthew Brown, with the lodestar calculation of the attorneys' hourly rate and number of hours worked. Dkt. No. 59-3. Distinct Media has not cited any authority that attorneys' fees in a CFAA case are recoverable, and the statute does not expressly authorize recovery of attorneys' fees. However, other court have considered an attorney's investigation into the fraud and identification of the individuals involved to be recoverable. *See NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1065 (S.D. Iowa 2009) (finding that attorneys' fees "incurred as part of the response to a CFAA violation, including the investigation of an offense" are recoverable). Distinct Media seeks to recover the attorneys' fees associated with its investigative efforts, including court-approved discovery to identify Shutov. The Court GRANTS the request for these attorneys' fees.

### 4. Yahoo Contract

Next, Distinct Media argues that Shutov's scheme caused Distinct Media to breach the terms of its agreement with Yahoo. As a consequence, Distinct Media had to repay Yahoo $1.891 million in invalid click fees, and $1 million in liquidated damages. Distinct Media argues that this amount is recoverable as an "interruption in service" under the statute. However, the Court finds that this request is not supported by law or evidence. Distinct Media cites no case that suggests a breach of a third-party contract constitutes an interruption of service. Additionally, the Court will not award nearly $3 million in damages on default judgment based solely on Distinct Media's declaration that these costs were incurred as a result of Shutov's conduct. This request is DENIED.

### 5. Money Transferred Out of MTACC Account

Finally, Distinct Media seeks disgorgement and return of any money accrued by Shutov under a theory of unjust enrichment. Dkt. No. 59 at 24. Specifically, Distinct Media seeks $335,308.16, money which was transferred out of Shutov's MTACC account between July of 2013 and December of 2014. In support of this request, Distinct Media has provided the declaration of the MTACC Chief Executive Officer, attesting to his knowledge of Shutov's MTACC account.

However, the Court finds that this request is inappropriate for two reasons. First, it appears that the proper parties to request the money that Shutov fraudulently made from fake advertisement are the parties who paid for the advertisements, such as Yahoo and eBay. Second, there is no evidence that all the money passing through Shutov's MTACC account was the result of fraudulent activity or related to Distinct Media's injury. Thus, this request is DENIED.

## IV. CONCLUSION

In conclusion, the Court ORDERS the clerk to reassign this case to a district judge. The Court RECOMMENDS that the district judge GRANT the motion for default judgment against Lev Shutov. The Court also RECOMMENDS that the district judge award the following relief:

1. An injunction enjoining Shutov from (i) accessing or attempting to access Distinct Media's computers, and (ii) deleting, altering, modifying or adding data, code, programs, or other unauthorized information about Distinct Media's computers, computer systems, or computer networks.

2. Investigative fees in the amount of: $27,889.27 for Deloitte consulting, $33,042 for internal costs, and $119,593.00 in legal fees. The Court recommends awarding a total of $180,524.27 in damages.

The Court RECOMMENDS that the district judge DENY Distinct Media's request for damages related to the Yahoo contract and to recover the amount transferred from the MTACC account.

Any party may object to this recommendation within 14 days after being served. Fed. R. Civ. P. 72(b). Distinct Media must serve Shutov with this order.

**IT IS SO ORDERED.**

Dated: March 10, 2017

NATHANAEL M. COUSINS
United States Magistrate Judge